UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE GRIMMETT,

      Plaintiff,

Case No. 2:11-cv-12623
Hon. Lawrence P. Zatkoff

v.

ANTHEM INSURANCE
COMPANIES, INC., *et al.*,

      Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 27, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the parties' cross Motions for Judgment on the Administrative Record [dkt 13, 16]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Plaintiff's Motion is DENIED and Defendants' Motion is GRANTED.

## II. BACKGROUND

**A. OVERVIEW OF THE PARTIES AND BENEFITS PLANS INVOLVED**

This case involves several different parties and comes to the Court upon a dispute over a long-term disability ("LTD") benefits. Plaintiff Katherine Grimmett was employed by the WellPoint Companies, Inc.

("WellPoint," not a party to this action) as a Senior Approver for approximately 13 years, until her termination on August 14, 2009. Plaintiff's duties as a Senior Approver included answering phone calls and reviewing and paying insurance claims.

As a WellPoint employee, Plaintiff received the WellPoint Flexible Benefit Plan ("the Plan"). The Plan is an ERISA-governed plan sponsored by Defendant ATH Holding Company, LLC ("ATH") for the benefit of eligible WellPoint employees. The administrator of the Plan is Defendant Anthem Insurance Companies, Inc. ("Plan Administrator").

The Plan consists of several component benefit programs including plans covering "Medical, Dental, Vision, Life/Accidental Death and Disability, Long Term Disability, and Flex Spending Accounts." The Plan component at issue in this case is the Plan's Long Term Disability Policy ("LTD Policy"), provided by Anthem Life Insurance Company ("Anthem Life," not a party to this action).

Pursuant to the Plan, the Plan Administrator appointed Anthem Life as the Claims Administrator for the LTD Policy. The Plan contains language specifically providing that Anthem Life maintains sole discretion to interpret the Plan in order to make benefits determinations ("Discretionary Language"). Anthem Life was thus responsible for LTD Policy claims administration, medical management, case management, and claims appeals.

**B. ELIGIBILITY FOR BENEFITS UNDER THE LTD POLICY**

To be eligible for LTD benefits under the Plan, Plaintiff was required to be disabled. According to the Plan's provisions, "Disabled" and "Disability" take on different meanings depending on whether the time period in question was within 24 months of the close of the Elimination Period[1]:

**Disabled** and **Disability** mean during the Elimination Period and the next 24 months because of [Plaintiff's] injury or sickness, *all* of the following are true:

- [Plaintiff is] unable to do the Material and Substantial Duties of [her] Own Occupation; *and*

---

[1] The "Elimination Period" is defined as "a period of continuous days of disability," and begins on the first day of disability. R. at 95. The Elimination Period ends on the latest of 180 days after the date the disability begins; the last day Short Term Disability benefits accrue for the disability; or the last day of any payable severance benefits under the WellPoint Severance Pay Plan. R. at 80.

2

- [Plaintiff is] receiving Regular Care from a doctor for that injury or sickness; *and*
- [Plaintiff's] Disability Work Earnings, if any, are less than or equal to 80% of [her] Indexed Pre-Disability Earnings.

Following the Elimination Period and a 24-month period of disability, Disabled and Disability mean that, because of [Plaintiff's] injury or sickness, *all* of the following are true:

- [Plaintiff is] unable to do the duties of any Gainful Occupation for which [Plaintiff is] or may become reasonably qualified by education, training, or experience; *and*
- [Plaintiff is] receiving regular Care from a doctor for that injury or sickness; *and*
- [Plaintiff's] Disability Work Earnings, if any, are less than or equal to 80% of [her] Indexed Pre-Disability Earnings.

R. at 93.[2]  "Material and Substantial Duties" is defined by the Plan as duties that:

1. Are normally required for the performance of [Plaintiff's] Own Occupation or any occupation; and
2. cannot be reasonably omitted or modified, except that [Anthem Life] will consider [Plaintiff] able to perform the Material and Substantial Duties if [she is] working or [has] the capability to work [her] normal scheduled work hours.

R. at 93. "Own Occupation" is defined as:

the occupation that [Plaintiff] regularly performed and for which [Plaintiff was] covered under the [LTD] Policy immediately prior to the date [Plaintiff's] Disability began. The occupation will be considered as it is generally performed in the national economy, and is not limited to the specific position [Plaintiff] had with the employer.

R. at 94.

**C. PLAINTIFF'S CLAIM FOR LTD BENEFITS**

On February 1, 2010, Plaintiff filed an application for LTD benefits asserting that she was permanently and totally disabled on the basis of "[her] high blood pressure, severe pain in [her] back and both knees and [her] racing pulse rate." As part of her application, Plaintiff submitted a "Treating Physician's Statement" completed by her treating physician, Larry Reid, D.O. ("Dr. Reid"). Dr. Reid's "Objective Findings" regarding Plaintiff's condition were "hypertosis/hbp [high blood pressure,"] "lumbar prolapse," and "bilateral knee pain." Dr. Reid's "Subjective Symptoms" with respect to Plaintiff included "back pain." Dr. Reid indicated that Plaintiff's

---

[2] All such citations by the Court refer to the Administrative Record. The Administrative Record was submitted to the Court by the parties and consists of 1,020 documents, labeled D0001–D1020. *See* Dkt. 14, 15.

restrictions ("what the patient SHOULD NOT do") and limitations ("what the patient CANNOT do") were: "bend, stoop, twist, climb, push, pull, lift." Based on these assertions, Dr. Reid concluded that Plaintiff could not return to her job in any capacity.

### D. FIRST DENIAL AND FIRST APPEAL

On March 9, 2010, Anthem Life informed Plaintiff by letter that Plaintiff's claim for LTD Benefits was denied. The letter acknowledged Dr. Reid's findings, yet concluded as follows:

> Based on our review of the available medical records and the physical requirements of your occupation, it has been determined that there is no objective medical evidence to support your diagnoses of disc prolapse or hypertension. Furthermore, there is no objective medical evidence to support your subjective complaints of shortness of breath, thoracic and lumbar pain, right hip and bilateral knee pain that would prevent you from performing the material duties of your occupation as a Senior Approver. We have determined that you do not meet the definition of disability as defined in the Plan, therefore you[r] request for benefits has been denied.

R. at 196.

On May 14, 2010, Plaintiff appealed Anthem Life's denial of her claim for LTD benefits under the Plan ("Appeal I"). Plaintiff enclosed with her appeal a letter from Dr. Reid, and medical records from Basha Diagnostics and Central Medical Imaging with results of tests conducted in April and May of 2010. Dr. Reid's letter again indicated that Plaintiff's restrictions were "no lifting, no bending, no stooping, no twisting, no pushing or pulling, no climbing" and that "she cannot currently perform any job functions." Dr. Reid described Plaintiff's diagnoses as follows:

> DIAGNOSES:
>
> -- HORIZONTAL TEAR OF THE POSTERIOR HORN OF THE MEDIAL MENISCUS,
>
> --COMPLEX TEAR OF THE POSTERIOR HORN AND BODY OF THE MEDIAL MENISCUS AND BILATERAL TRICOMPARTMENTAL ARTHROSIS; MOST ADVANCED AT THE MEDIA FEMOROTIBIAL ARTICULATION,
>
> --THORACIC SPINE HAS SPONDYLOSISTHESES WITH MULTILEVEL DISC BULGES FROM T-3 THROUGH T-10 THAT EFACE THE ANTERIOR EPIDURAL SPACE,

>   --LUMBAR SPINE FROM L-3 THROUGH L-5 HAS DISC DESICCUTION, MILD LOSS OF DISC HEIGHT, ARTHROSIS, AND IRREGULAR DISC BULGE. (PLEASE SEE REPORTS ATTACHED.).
>
>   --HYPERTENSION

R. at 455 (formatting in original). Additionally, Dr. Reid indicated that Plaintiff's prognosis was "guarded[,]" and that "[Plaintiff] is on medication and physical therapy treatments." R. at 456.

### E. DR. BOSCARDIN'S REVIEW OF PLAINTIFF'S CLAIM

For further review, as part of the appeal process, Anthem Life referred Plaintiff's claim to Dr. James B. Boscardin, M.D. ("Dr. Boscardin"), an independent medical reviewer. Dr. Boscardin is a spine surgeon and Diplomate of the American Board or Orthopaedic Surgery. Dr. Boscardin sought further clarification of Dr. Reid's restrictions and limitations on Plaintiff's activities and attempted to contact Dr. Reid. Dr. Reid's phone line was disconnected. Dr. Boscardin also states he attempted to obtain Dr. Reid's contact information through other means but was unsuccessful.

Dr. Boscardin then drafted a letter to Dr. Reid. In his letter, Dr. Boscardin pointed out that although Dr. Reid had indicated that Plaintiff had "spondylolisthesis with multiple disc bulges from T3 to T10," Dr. Boscardin believed that this was a "mis-type because in the impression, she has listed spondyl*olysis*." (emphasis added). Dr. Boscardin stated that "[i]f [Plaintiff] in fact had a spondyl*olisthesis*[,] which is an offset of one vertebrae related to the other in the thoracic spine, there would have been further comment and this represents a far more guarded situation than what is reflected in the ultimate opinion." (emphasis added). Dr. Boscardin explained that he was a spine surgeon, and that he was comfortable that Plaintiff had spondylolysis, which was also listed in the "final impression" section of the MRI report. R. at 440. Dr. Boscardin also found that:

>   based on a review of all the records provided to me that [Plaintiff] is capable of sitting, one and one-half to two hours at a time, interspersed with brief periods of standing or even walking for a minimum of ten to fifteen minutes. I believe she can do this on an eight hour basis, 40 hours a week and this is pertinent from 8/19/09 to present.

R. at 440.

On July 30, 2010, after not having heard from Dr. Reid, Dr. Boscardin prepared a report regarding his findings. The report reflected Dr. Boscardin's belief that Dr. Reid's use of the term "spondylolisthesis" was a typographical error, because only spondylolysis was noted in the descriptive portion of the report and an impression of spondylolisthesis would have "called for further explanation by the radiologist when evaluating the film." In addition, he indicated that there were osteoarthritic changes in both of Plaintiff's knees, but indicated that "[t]hese findings are not unusual in a claimant of this build weighing 350 pounds."

Dr. Boscardin's Medical Analysis concluded:

> [Plaintiff] was cared for by Dr. Larry Reid, who appeared in February of 2010 to indicate that she was limited [to] stooping, bending, twisting, pushing, [and] pulling. It was interpreted on the basis of this information that her present occupation was not precluded and that she could perform her sitting activities, alternating with brief periods of standing. Dr. Reid responded in May of 2010 when he indicated that "she cannot currently perform any job function and her prognosis is guarded." *A review of Dr. Reid's records does not support such limitation of activities or preclude modified functional levels.* Her MRIs of her knees do indicate some degenerative arthritic changes and meniscal tears, *but there is no recommendation of any surgery, any Cortisone injections or any medications to deal with these issues. The thoracic MRI was reported to show spondylolisthesis, but I believe as discussed above, that this is not correct and that it's a typographical error and what she really has is widespread spondylolyis, which is a degenerative process and not accompanied by any instability or offset of the vertebrae.* The term spondylolisthesis conotates [sic] an offset of the vertebrae. *I do not believe in reviewing this record, that there is any indication other than this one entry into the findings, which was not duplicated in the final impression of the MRI of the thoracic spine.* The lumbar MRI reveals degenerative disc disease. In summary, the records do not support such significant limitations as mentioned by Dr. Reid in his May, 2010 letter.

R. at 444 (emphasis added).

In response to the question of whether the restrictions and limitations provided by Dr. Reid were medically reasonable given the findings on diagnostic testing and physical examinations, Dr. Boscardin answered:

> Due to [Plaintiff's] arthritis in her knees and her obesity, restrictions and limitations are reasonable from 8/19/09 onward. [Plaintiff's] low back condition is not supported by any major findings in her lumbar or thoracic spine. She basically has degenerative changes, which may definitely call for limitations on bending, twisting, stooping and a lifting restriction of ten pounds. *Findings on the MRIs, which were not done until May of 2010, do not preclude a sitting position that allows frequent change of position with brief periods of standing or walking.* I believe that [Plaintiff's] restrictions and limitations from 8/19/09 should call for no lifting over

6

> ten pounds, no pushing, twisting, stooping, crouching and that she should be allowed to change positions every two hours and intersperse her sitting with standing and even walking for 10 to 15 minutes at a time. *This frequent change of position should allow for eight hours a day, 40 hours a week . . . .* Her walking should not require her to be carrying any items greater than ten pounds.

R. at 444 (emphasis added). Dr. Boscardin was also asked whether he agreed with Dr. Reid's conclusion that Plaintiff's prognosis was "guarded," to which Dr. Boscardin responded:

> No. I believe [Plaintiff's] situation is pretty stable. She had been under [Dr. Reid's] care for approximately nine months and just recently had undergone some Imaging Studies. *I believe that neither of the MRIs preclude sitting and certainly would not contribute to any opinion that her prognosis is guarded.* Her major problem is her obesity at 350 pounds. This weight on arthritic knees may be problematic, *but it does not preclude sedentary activities* as listed above.

R. at 445 (emphasis added).

On August 27, 2010, Dr. Reid submitted treatment notes from his office for the period of May 5, 2010 through August 25, 2010. Anthem Life provided Dr. Boscardin with these records. In a subsequent report dated September 10, 2010, Dr. Boscardin concluded that the information provided was the same as he had previously reviewed and that this new information did not alter his prior opinion. R. at 421–22.

On September 2, 2010, Dr. Reid submitted to Anthem Life a response to Dr. Boscardin's report. R. at 423–26. He defended his conclusion that Plaintiff suffered from spondylolisthesis. R. at 424. Dr. Reid also stated: "It should be obvious to a trained Osteopathy Physician or a Spine Surgeon who is a medical consultant, that a 5 feet 4 inches, weight of 371 pounds, obese lady can not stand or walk for a minimum of ten to fifteen minutes, or work for eight hours a day or 40 hours a week." Dr. Reid also asserted that Plaintiff's medical records "prove why she is disabled at this time." R. at 425. Anthem Life provided Dr. Boscardin with Dr. Reid's letter. R. at 419–20.

In a report dated September 14, 2010, Dr. Boscardin concluded that his previous opinions were unaltered by Dr. Reid's letter. R. at 420. Dr. Boscardin also stated:

> [Plaintiff's] spinal imaging studies which I have carefully reviewed each time do point to degenerative changes *but there are no clinical findings other than self-reported complaints relative to her spine.* All notes provided are hand written and difficult to read and the recent

> letter again provides *no functional testing or physical exams and the comments about the thoracic spine again support my belief that her problem in that area is spondylolysis and not spondylolisthesis.* Her knees need restrictions and limitations also and those were provided earlier. The literature and my beliefs are that people with chronic pain without solid objective findings are best served by being active and engaged in meaningful duties. *One simply cannot find degenerative changes on imaging and declare someone unable to function.* This letter sent by Dr. Reid does not alter my previous opinions.

R. at 420 (emphasis added).

### F. SECOND DENIAL AND SECOND APPEAL

On September 23, 2010, Anthem Life notified Plaintiff by letter that Appeal I was denied. The letter reviewed Dr. Boscardin's findings and noted that Plaintiff's restrictions did not prevent her from performing the sedentary position of Senior Approver. The letter noted that the decision was final and provided Plaintiff with information regarding her right to contest the denial by filing a lawsuit under ERISA. R. at 402.

Plaintiff contacted Anthem Life in November 2010 and requested a second appeal. Anthem Life agreed to conduct a second appeal and requested that any new information be submitted as soon as possible. On March 23, 2011, Plaintiff's counsel submitted a second appeal and 19 attachments to Anthem Life ("Appeal II"). On April 4, 2011, Anthem Life acknowledged Appeal II and assigned it to Senior Quality/Compliance Analyst Zanita Miller ("Miller"), an employee that had not been involved in Plaintiff's initial claim or Appeal I.

Miller referred Appeal II to peer review with an independent pain management specialist, Dr. Michael Chang, D.O. Dr. Chang's role was to determine, through a detailed review of Plaintiff's claim file and medical records, what limitations were appropriate in light of Plaintiff's state. Dr. Chang attempted to reach Dr. Reid by telephone on April 20, 21, and 22, 2011 to discuss his findings with respect to Plaintiff. Dr. Chang states that each time, he left a message with an individual named "Barbara" and requested a return call. Dr. Chang also faxed Dr. Reid a questionnaire on May 11, 2011. Dr. Reid never responded to any of the telephone calls or to the letter.

After reviewing Plaintiff's case, Dr. Chang concluded that Plaintiff did have some restrictions that contributed to certain functional limitations. With regard to her complaints of low back and thoracic spine pain,

8

however, Dr. Chang found "very little objective evidence [supporting] impairment. The only study that shows any significant finding is an EMG/NCS done on 11/20/10, which showed L5 S1 lumbar radiculopathy without corresponding MRI findings." R. at 490. Dr. Chang additionally noted that "[t]here is no objective physical examination finding that would suggest lumbar radiculopathy or any findings other than pain." R. at 490.

**G. PLAINTIFF'S CLAIM REFERRED FOR VOCATIONAL REVIEW**

Based on the restrictions identified by Dr. Chang, Miller referred the claim for a vocational review regarding Plaintiff's ability to perform her "Own Occupation" as defined by the Plan. R. at 22. The reviewer, Nancy O'Reilly ("O'Reilly"), is a Certified Rehabilitation Counselor and Certified Case Manager. O'Reilly used the peer review conducted by Dr. Chang and obtained the DOT description of the job positition that most closely approximated the position of Senior Approver—that of "Claims Examiner, DOT Code: 241,267-018".[3] Based on this information and her expertise and training, O'Reilly determined that the medical limitations as found by Dr. Boscardin and affirmed by Dr. Chang did not preclude Plaintiff from performing her sedentary position of Senior Approver.

**H. THIRD DENIAL AND SUBSEQUENT LAWSUIT**

On May 18, 2011, Anthem Life notified Plaintiff's counsel that Appeal II was denied, finding as follows:

> In summary, there is insufficient clinical evidence to support the presence of a physical medical condition that would render [Plaintiff] unable to perform the material and substantial duties of her own occupation as a Senior Approver. While [Plaintiff] may have been experiencing symptoms of pain, there is *no clinical evidence* that her symptoms would rise to the level that she would be unable to perform her sedentary occupation. Therefore, we have determined that [Plaintiff] does not meet the definition of disability. No LTD benefits are payable and [Plaintiff's] claim remains closed.

R. at 473.

---

[3] Plaintiff does not challenge the designation of her Senior Approver position as most similar to the DOT's Claims Examiner position.

9

On June 17, 2011, Plaintiff filed this lawsuit challenging Anthem Life's denial of benefits under § 502(a)(1)(B) of ERISA, which authorizes an individual to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### III. LEGAL STANDARD

"When reviewing an ERISA administrative decision, our review is limited to the evidence that the plan administrator examined in making his or her determination." *Ziegler v. HRB Mgmt.*, 182 F. App'x 405, 406 (6th Cir. 2006) (citing *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005)). Therefore, "the district court should conduct a . . . review based solely upon the administrative record." *Wilkins*, 150 F.3d at 619.

The standard of review on a denial of benefits decision in an ERISA case depends largely on whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (internal quotations and citations omitted). If the plan vests no discretionary authority in the administrator, then the decision should be reviewed by the court *de novo*. *Firestone Tire & Co. v. Bruch*, 489 U.S. 101, 102 (1989).

### IV. ANALYSIS

#### A. APPROPRIATE LEVEL OF REVIEW

Plaintiff first argues that the Court's review should be made under a *de novo* rather than an "arbitrary and capricious" standard. Plaintiff concedes that the Plan "contains a discretionary clause sufficient to invoke the deferential arbitrary and capricious review standard pursuant to *Firestone*." *See* Dkt. 13 at 12. Plaintiff, however, nevertheless disputes that the "arbitrary and capricious" standard should apply. According to Plaintiff, the Plan and the LTD Policy are two separate and distinct contracts. From this, Plaintiff postulates that Anthem Life's initial denial of Plaintiff's claim was governed by the terms of the Plan, while Anthem's denial of Appeals I and

10

II were based on the LTD Policy. Reaching this conclusion, Plaintiff then argues that the LTD Policy contained insufficient Discretionary Language to trigger "arbitrary and capricious" review.

Likely realizing that the LTD Policy does in fact contain clear and unambiguous Discretionary Language, Plaintiff then argues that this language is nevertheless invalidated by Mich. Admin. Code R. 500.2201–02, which prohibits the use of discretionary language in certain contracts. Plaintiff makes this argument despite the fact that the Policy contains a choice of law clause requiring the application of Indiana law. Plaintiff's argument accordingly concludes with an assertion that the Indiana choice of law clause is inapplicable. As discussed below, the Court finds Plaintiff's arguments unpersuasive and thus finds that an arbitrary and capricious standard applies in this case.

*1. The Interplay Between the Plan and the Policy*

First, the Court concludes that the Plan and the Policy constitute a single document. According to the Plan's express language, it incorporates the LTD Policy by reference and also states unambiguously that the Plan, "together with [the Policy,] constitutes the written plan document required by Section 402 of ERISA and the Summary Plan Descriptions required by Section 102 of ERISA." Moreover, Plaintiff offers no authority, legal or otherwise, to support her theory that the Plan and the Policy are somehow severable. Instead, Plaintiff relies only on a letter from Anthem Life to Plaintiff's counsel that states "the [LTD Policy] sponsored by WellPoint is self funded during the first two years of a claim and insured thereafter." By its terms, however, the letter refers to the *funding mechanism* for the LTD component of the Plan, and does not appear in any way to contemplate the severability of the Plan from the LTD Policy, or their respective applicability to Plaintiff's claim. Therefore, Plaintiff's argument must fail. Having determined that the Plan and Policy are, in fact, a single document, the Court turns next to the issue of whether they contained sufficient Discretionary Language to trigger an arbitrary and capricious standard of review.

*2. Discretionary Language in the LTD Policy*

11

As noted, Plaintiff has conceded that Discretionary Language appears in the Plan yet argues that substantially similar language in the LTD Policy is not discretionary.[4] The Court disagrees. The LTD Policy provides in separate provisions that "[w]hen making a benefit determination under the [P]olicy, [Anthem Life] [has] *discretionary authority* to determine [Plaintiff's] eligibility for benefits and to interpret the terms and provisions of the [P]olicy[,]" and that "[Anthem] [has] the *discretionary authority* to determine [Plaintiff's] eligibility for benefits and to construe the terms of the policy to make a benefits determination." (emphasis added). Notwithstanding that such language is unambiguously discretionary on its face, the Sixth Circuit has found that other similar language invokes the arbitrary and capricious standard of review. *See Seiser v. UNUM Provident Corp.*, 135 Fed. App'x. 794, 797 (6th Cir. 2005) (finding the following language sufficient to trigger arbitrary and capricious review: "[w]hen making a benefit determination under the policy, UNUM has *discretionary authority* to determine [the insured's] eligibility for benefits and to interpret the terms and provisions of the policy.") (emphasis added). *See also Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006). Plaintiff's conclusory argument that this discretionary language is insufficient therefore fails. The Court finds that the LTD Policy, alone, contains sufficient Discretionary Language to trigger an arbitrary and capricious standard of review.

Having determined that both the Plan and the LTD Policy contain Discretionary Language triggering the arbitrary and capricious standard of review, the Court last turns to Plaintiff's argument that any Discretionary Language is invalidated by Michigan's Administrative Code.

*3. Mich. Admin. Code R. 500.2201, 2202*

In February 2007, the Michigan Office of Financial and Insurance Services promulgated Mich. Admin. Code R. 500.2201–02, prohibiting discretionary clauses in insurance contracts issued, advertised, or delivered to

---

[4] Given that the Court has found the Plan and the LTD Policy to be a single document, *see supra*, Section A.1, Plaintiff's concession that the Plan contains Discretionary Language sufficient to trigger arbitrary and capricious review also extends to the LTD Policy. The Court, however, will proceed with its analysis determining that the LTD Policy also contained sufficient Discretionary Language.

any person in Michigan and requiring *de novo* review of denials of ERISA benefits in Michigan.  *See* Mich. Admin. Code R. 500.2201–02 (2007).  Plaintiff asserts that this statute invalidates any Discretionary Language, despite the fact that the LTD Policy (and thus the Plan) contains a choice of law provision declaring that the Policy "is delivered in and is governed by the laws of Indiana[.]"  The Court again finds Plaintiff's argument unpersuasive.

"In determining which state's law applies in an ERISA case, this court's 'analysis is governed by the choice of law principles derived from federal common law.'"  *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (quoting *Medical Mut. of Ohio v. deSoto,* 245 F.3d 561, 570 (6th Cir.2001)).  Under those rules, choice-of-law provisions in an ERISA plan that prefer one state's laws over another generally will be honored, unless an overriding policy consideration requires a different choice.  *Id.* (citing Restatement (Second) of Conflict of Laws § 187 (1971) (hereinafter "Restatement")).  "In the absence of any established body of federal choice-of-law rules, we begin with the [Restatement.]"  *Id.*

The Restatement provides in pertinent part:

### § 187 Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

As such, the Court thus examines whether the parties could have resolved the issue—*i.e.*, whether the arbitrary and capricious standard should apply—by an explicit provision in the contract.  *DaimlerChrysler*, 448 F.3d at 923.  "If they could have, then the choice of law provision is enforceable."  *Id.* (emphasis added).

In this case, the Plan contains a provision that expressly provides for the application of the arbitrary and capricious standard of review.  As noted, the Plan provides: "Any determination made or action taken by the Plan Administrator or, when delegated, [Anthem Life], pursuant to this Plan shall be deemed to be conclusive with respect to any Covered Person or other individual to whom that determination or action relates, and any such determination or action may be reversed by a court of competent jurisdiction *only upon a finding by the court that*

13

*such determination or action was arbitrary and capricious.*" R. at 56. Here, the Plan Administrator delegated claims administration to Anthem Life, which made a determination as to Plaintiff's LTD benefits. Thus, according to the express language of the Plan, Anthem Life's determination may be reversed "only upon a finding by the court that such determination . . . was arbitrary and capricious." As such, the issue of the appropriate standard of review is one "which the parties could have resolved by an explicit provision in their agreement directed to that issue," since the Plan unambiguously provides for a resolution. *See DaimerChrysler*, 448 F.3d at 923. The Indiana choice-of-law provision thus applies, rendering Mich. Admin. Code R. 500.2201–02 inapplicable.

### 4. Conclusion as to Standard of Review

For the above reasons, the Court finds that an arbitrary and capricious standard applies in this case. Using this standard, the Court now turns to a review of the administrative record and Anthem Life's decision to deny Plaintiff's LTD benefits claim.

## B. ANTHEM LIFE'S DENIAL OF PLAINTIFF'S CLAIM

Anthem Life ultimately found that, although Plaintiff does have legitimate restrictions and limitations, she is nonetheless able to perform the material and substantial duties of a Senior Approver with WellPoint. Anthem Life reasoned that Dr. Boscardin, Dr. Chang ("the Doctors"), and O'Reilly each conducted a thorough review of the records in reaching their respective conclusions. Plaintiff, however, asserts that it was an abuse of discretion for Anthem Life to reject Dr. Reid's conclusion—that Plaintiff was completely and permanently disabled—and accept the countervailing views. The Court finds Plaintiff's argument misplaced.

The arbitrary or capricious standard of review "is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotes and citation omitted). An arbitrary and capricious standard "requires that the decision 'be upheld if it is the result of a deliberate, principled reasoning process, and if it is supported by

14

substantial evidence.'" *Mitchell v. Dialysis Clinic, Inc.,* 18 Fed. App'x. 349, 353 (6th Cir. 2001) (citing *Killian v. Healthsource Provident Admin., Inc.,* 152 F.3d 514, 520 (6th Cir.1998)). Where a plan grants an administrator discretionary authority to determine eligibility for benefits, or to construe the terms of a plan, courts grant "great leeway" in the review of such decisions. *Moos v. Square D Co.,* 72 F.3d 39, 42 (6th Cir.1995). Even where there are two reasonable interpretations of the Plan, the court cannot reverse the Administrator's determination. *Anderson v. Emerson Elec. Co.,* 161 Fed. App'x. 504, 507 (6th Cir. 2005).

The Court finds that Anthem Life's reliance on the opinions of Dr. Boscardin, Dr. Chang, and O'Reilly was not arbitrary and capricious. First, Dr. Boscardin "offered a reasoned explanation, based on the evidence," for reaching his conclusion. Dr. Boscardin stated that he initially attempted to contact Dr. Reid to speak with him regarding his conclusions but was unable to reach him. Dr. Boscardin then compiled his report, listing in detail the documents, reports, and imaging studies he relied upon. He explained in detail why the objective medical evidence—such as imaging studies—did not support Plaintiff's subjective claims. While acknowledging that Plaintiff does have some legitimate restrictions based primarily on her morbid obesity, Dr. Boscardin determined Plaintiff is nevertheless able to perform the material and substantial duties of a Senior Approver with WellPoint, a sedentary occupation. In denying Plaintiff's Appeal I, Anthem Life described Dr. Boscardin's findings and indicated them as a source of the denial.

Second, Dr. Boscardin's conclusion was later supported by both Dr. Chang and O'Reilly during Appeal II. In this third review, Anthem Life combined the views of two experts to determine two separate issues despite not having any obligation to even conduct a second appeal, having done so only upon Plaintiff's special written request. During the third review, Anthem Life referred Plaintiff's claim to Dr. Chang for a determination of whether and to what extent Plaintiff had restrictions or limitations. Dr. Chang found little objective evidence supporting Plaintiff's low back and thoracic spine impairment, and was in accord with Dr. Boscardin's limitations on walking, bending, twisting, stooping, and lifting. R. at 30. Anthem Life then referred Dr. Chang's determination to O'Reilly. O'Reilly found the DOT occupation—Claims Analyst—that most closely

15

approximated Plaintiff's former position of Senior Approver.  O'Reilly then applied Dr. Chang's conclusions regarding restrictions to the required activities of a Claims Analyst and determined that Dr. Chang's findings did not preclude Plaintiff from performing her sedentary position of Senior Approver.  As such, the third review of Plaintiff's claim involved an even more "deliberate, principled reasoning" than the prior reviews since it separated the issues of restrictions and vocational functioning and sought independent review of each by separate specialists.

Third, Anthem Life had the authority to choose to adopt the view of Dr. Chang and Dr. Boscardin that there is little if any objective medical evidence to support Plaintiff's subjective complaints.  *See*, *e.g.*, R. at 28–32; 399–402.  So long as a plan administrator offers a reasonable explanation based upon the evidence for a decision, the plan administrator may choose to rely upon the medical opinion of one doctor over that of another doctor.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

Last, Anthem Life offered a reasoned explanation for adopting the view of Dr. Boscardin, Dr. Chang, and O'Reilly rather than that of Dr. Reid.  This was especially apparent with respect to their disagreement with Dr. Reid over the condition of Plaintiff's thoracic spine.  Although Dr. Reid is confident in his diagnosis of thoracic spondylosisthesis, Dr. Boscardin and Dr. Chang point out that there is simply no objective evidence of spondylosisthesis in the imaging studies of Plaintiff's thoracic region.  It is not unreasonable for Anthem Life to seek a medical explanation tying the conclusion that the Plaintiff is disabled to some medical finding that supports it.  *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir.1996) (holding that "[i]n the absence of any definite anatomic explanations of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious").

Similarly, with respect to Plaintiff's ability to perform the functions of a Senior Approver, Anthem Life adopted O'Reilly's view—based on Dr. Chang's determination as to limitations—that the role of Senior Approver was a sedentary one, and that Plaintiff's activities were not so limited as to preclude her from materially and substantially serving in that role. *See* R. at 402 ("According to [WellPoint], the duties of Senior Approver are sedentary in nature. Although [Plaintiff is] required to sit continuously, the job can be performed by alternating sitting and standing; thus providing [Plaintiff] the opportunity to change positions as needed. Standing and walking are required only occasionally and [Plaintiff is] not required to lift more than ten pounds."). Because Anthem Life relied on O'Reilly's determination—which was based on Dr. Chang's, which considered Dr. Boscardin's and explained why Plaintiff's limitations did not wholly preclude her from working as a Senior Approver—Anthem Life set forth "a reasonable explanation based upon the evidence" for its decision.  As a result, Anthem Life's rejection of Dr. Reid's opinion was not arbitrary and capricious.

For these reasons, Anthem Life's decision to deny Plaintiff's claim for LTD benefits should be upheld, and Defendants' Motion for Judgment on the Administrative Record should be granted.

## V. CONCLUSION

Accordingly, it is HEREBY ORDERED that Defendants' Motion for Judgment on the Administrative Record [dkt 16] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment on the Administrative Record [dkt 13] is DENIED.

IT IS SO ORDERED.

Date:  September 27, 2012

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
U.S. DISTRICT JUDGE
